MATTHEWS, APPELLANT, *v.* WALKER, APPELLEE.

(No. 72AP-324—Decided February 27, 1973.)

*Messrs. Cassidy & Lamkin,* for appellant.
*Messrs. Wright, Harlor, Morris & Arnold, Mr. Earl F. Morris* and *Mr. Charles C. Warner,* of Counsel, for appellee.

HOLMES, J. This matter involves an appeal of a summary judgment of the Court of Common Pleas of Franklin County sustaining a motion by the defendant, the appellee herein, to dismiss an action of malpractice brought against the defendant, a professional podiatrist. The motion was sustained upon the basis that the action was not brought within the one-year statute of limitations provided in R. C. 2305.11.

The facts, in brief, giving rise to this appeal are as follows:

The plaintiff had, on June 11, 1970, engaged the services of the defendant, Mr. Owen Walker, a professional podiatrist, for the purpose of trimming her toenails. As alleged in this complaint, the defendant, while proceeding with such trimming process, cut the plaintiff's left middle toe with the sharp instrument being used for such trimming.

Further, as alleged in the complaint, because the plaintiff, the appellant, suffered from diabetes and hypertensive

cardiovascular disease, the negligent cutting of the plaintiff's toe, and the tight bandage as applied by the defendant, occasioned an infection and a gangrenous condition of the plaintiff's toe.

The plaintiff proceeded to bring a malpractice action against this defendant, the complaint being filed on May 4, 1972, a period of time which was more than one year from the date of the alleged act of malpractice.

The defendant filed his motion, pursuant to Civ. R. 12 (B) (6), challenging the complaint for a failure to state a claim upon which relief could be granted. The court, according to the rule, treated the motion as one seeking a summary judgment, and considered it on that basis, as provided for by Civ. R. 56, in that the defendant had submitted affidavits in support of such motion. Such affidavits referred to the defendant's professional credentials as well as a statement of his professional services rendered to this plaintiff.

The trial court, in dismissing such malpractice action, held that the defendant, on the occasion in question, was performing a professional medical service for the plaintiff, and within the context of such professional service the defendant podiatrist "is a doctor as contemplated by the one-year statute of limitations, Section 2305.11, R. C."

The issue upon this appeal is a narrow one, and is precisely stated within the plaintiff's single assignment of error as follows:

"The trial court erred as a matter of law when it sustained defendant's motion for summary judgment, since the proper period of limitations for action against a podiatrist is two years."

In 1894, the General Assembly amended the one-year statute of limitation for bringing actions to include actions for malpractice. Such section is now R. C. 2305.11.

In arriving at the answer to the limited question presented, a brief review of the definition of the term "malpractice" would be in order, as would a review of the case law defining who might be encompassed within such term.

A number of defintions of malpractice may be found in standard dictionaries as well as legal dictionaries. In

Webster's Third New International Dictionary (unabr. 1966), we find "malpractice" defined as "the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services or to those entitled to rely upon them * * *."

In 26 Words & Phrases 328, "malpractice" is defined as "any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct."

As stated in 42 Ohio Jurisprudence 2d 629, Physicians and Surgeons, Section 111, we find that "Malpractice is generally regarded as a tort, and it may be defined as negligent or unlawful wilful acts committed by a physician in treating his patient, by which such person suffers death or injury." Citing *Cramer* v. *Price* (1948), 84 Ohio App. 255.

It is said that the relationship between the parties which may give rise to an action in malpractice is a contractual relationship. As stated in 42 Ohio Jurisprudence 2d 630, Physicians and Surgeons, Section 112: "A physician or surgeon, in his contract with a patient, undertakes, either expressly or by implication, that he possesses ordinary knowledge and skill in his profession, and that he will use reasonable and ordinary care and diligence in the exercise and application of his skill and knowledge, to accomplish the purpose for which he is employed * * *." Citing *Gillette* v. *Tucker* (1902), 67 Ohio St. 106. Also, see *Bowers* v. *Santee* (1919), 99 Ohio St. 361.

The common law provided that every physician or surgeon would be held liable for injuries to his patient proximately resulting from a want of requisite knowledge, care and skill, *Craig* v. *Chambers* (1867), 17 Ohio St. 253.

The first two paragraphs of the syllabus of *Gillette* v. *Tucker, supra,* are as follows:

"1. A surgeon and physician, employed to treat a case professionally, is under an obligation, which the law implies from the employment, to exercise the average degree

of skill, care and diligence exercised by members of the same profession, practicing in the same or a similar locality, in the light of the present state of medical and surgical science; and that he will indemnify the patient against any injurious consequences which may result from his want of ordinary skill, care and attention in the execution of his employment.

"2. It is the duty of the physician and surgeon to exercise due and ordinary skill, care and attention, not only in and about an operation which he decides to be necessary, but also, in the absence of a mutual understanding, or notice to the contrary, to render such continued further care and treatment as the necessity of the case requires; and he is liable for injuries and damages which proximately result from the want of such ordinary skill, care and attention."

Now that the term "malpractice" has been examined as to its meaning, we must look at the statute and case law applicability to such type of action and the limitations thereon, as such action relates to the various professions.

For many years it has been accepted by the courts in Ohio that the common meaning and legal definition of the term "malpractice" included the profession of law. Accordingly, it was held in *Long* v. *Bowersox* (1909), 8 N. P. (N. S.) 249, that, as used in the statute, "malpractice" refers not only to actions against physicians and surgeons, but also to actions against attorneys at law.

It has also been held in a number of Ohio cases that the term "malpractice" applies to dentists, and therefore actions against dentists fall within the one-year statute of limitations. In the case of *Cox* v. *Cartwright* (1953), 96 Ohio App. 245, the court stated, at page 248:

"It has long been recognized that 'malpractice' applies to physicians and surgeons (and indeed lawyers) who commit negligent acts in treating a patient, or who unskillfully treat patients not within the standards of quality set forth in *Gillette* v. *Tucker, supra*. It likewise is obvious, when considering the controlling reasons for the law of torts arising out of the relationship of doctor and pa-

tient, that a dentist may be guilty of malpractice if he falls short of professional standards in providing and fitting dentures; and this court, in this case, so pronounces the law to be."

See, also, *Cook* v. *Yager* (1968), 13 Ohio App. 2d 1.

However, Ohio case law has in the past tended to emphasize that the word "malpractice" as contained in statutes of limitations has its basic application to a practitioner of either law or medicine. *Wishnek* v. *Gulla* (1953), 67 Ohio Law Abs. 49; *Richardson* v. *Doe* (1964), 176 Ohio St. 370.

In the latter case, the Supreme Court held in the syllabus as follows:

"A negligence action against a hospital based on the doctrine of *respondeat superior* for the negligence of a nurse is subject to the two-year statute of limitations for bodily injury actions."

Judge Matthias stated in the opinion, at page 372:

"At the time this statute was enacted, the common meaning and legal definition of the term, 'malpractice,' was limited to the professional misconduct of members of the medical profession and attorneys. See *Long* v. *Bowersox*, 8 N. P. (N. S.), 249, 254. Thus, when this amendment was enacted, it was not meant to apply to nurses.

"Today, the term, malpractice, is sometimes used loosely to refer to the negligence of a member of any professional group. However, legally and technically, it is still subject to the limited common-law definition. It is well established that where a statute uses a word which has a definite meaning at common law, it will be presumed to be used in that sense and not in the loose popular sense. *Grogan* v. *Garrison,* 27 Ohio St., 50, 63."

We feel that the main basis for the court's determination in *Richardson* v. *Doe, supra,* that an action against a hospital for the negligence of a nurse did not fall within the malpractice statute of limitations, was as set forth in the following language found within the opinion at page 373:

"A nurse is not authorized to practice medicine. Sec-

tion 4723.33, Revised Code. Her primary function is to observe and record the symptoms and reactions of patients. A nurse is not permitted to exercise judgment in diagnosing or treating any symptoms which the patient develops. Her duty is to report them to the physician. Any treatment or medication must be prescribed by a licensed physician. Section 4723.06, Revised Code. It is in the areas of diagnosis and prescription that there is the greatest danger of unwarranted claims. A nurse by the very nature of her occupation is prohibited from exercising an independent judgment in these areas and thus is not subject to such claims.''

It is our view that the court in *Richardson* v. *Doe, supra,* was placing the emphasis upon the independent judgment of a professional practitioner as being the keystone as to whether such statute of limitations was applicable.

In the instance of a nurse, the court felt that no such independent professional judgment was exercised. The court pointed out that, conversely, the physician is required to exercise his independent judgment in the practice of medicine and has, by common law, accordingly been afforded the benefit of the malpractice statute of limitations.

Within the context of the statutes setting forth the extent of the rights of practice of podiatrists, and in light of the Supreme Court's interpretation of the statute of limitations on malpractice actions, we hold such statute to be applicable to podiatrists.

In arriving at this conclusion, we have given considerable attention and emphasis to the background and history of the Ohio laws relating to podiatrists, formerly known as chiropodists. Prior to the amendment of the statutes in 1959, the examination and registration for the practice of podiatry was provided for within R. C. 4731.15, which section as applicable to the "limited branches of medicine or surgery" provided as follows:

"The state medical board shall also examine and register persons desiring to practice any limited branch of medicine or surgery, and shall establish rules and regulations governing such limited practice. Such limited branch-

es of medicine or surgery shall include chiropractic, naprapathy, spondylotherapy, mechanotherapy, neuropathy, electrotherapy, hydrotherapy, suggestivetherapy, psychotherapy, magnetic healing, chiropody, Swedish movements, massage, and such other branches of medicine or surgery as the same are defined in section 4731.34 of the Revised Code, except midwifery and osteopathy.''

The statutes relating to podiatry were rather extensively amended in 1959, and podiatrists and podiatry were taken out of R. C. 4731.15 and are no longer grouped with the other practitioners of limited branches of medicine or surgery as set forth in such section.

The new sections, R. C. 4731.51 through R. C. 4731.61, passed in 1959, provide for the examination, qualification, and breadth of practice of podiatrists. Under the 1959 act, the practice of chiropody, as set forth in R. C. 4731.51, basicially consists of the ''* * * treatment of ailments of hand or foot, non-systemic in character, and the treatment of muscles and tendons of the lower leg governing the functions of the foot. * * *''

In 1967, R. C. 4731.51 was amended and the term ''chiropody'' was changed to ''podiatry.'' The practice of podiatry was redefined to include medical, mechanical, and surgical treatment of the foot and lower leg muscles and tendons, and superficial nontraumatic lesions of the hand. Such section, as newly enacted, is set forth in its entirety as follows:

''The practice of podiatry consists of the medical, mechanical, and surgical treatment of ailments of the foot, the muscles and tendons of the leg governing the functions of the foot; and superficial lesions of the hand other than those associated with trauma. Podiatrists are permitted the use of such preparations, medicines, and drugs as may be necessary for the treatment of such ailments. The podiatrist may treat the local manifestations of systemic diseases as they appear in the hand and foot, but the patient shall be concurrently referred to a doctor of medicine or a doctor of osteopathic medicine and surgery for the treatment of the systemic disease itself. General anaesthetics

may be used under this section only in colleges of podiatry approved by the medical board pursuant to section 4731.-53 of the Revised Code and in hospitals approved by the joint commission on the accreditation of hospitals, or the American osteopathic association. The use of x-ray or radium for therapeutic purposes is not permitted."

It can be seen that a podiatrist, pursuant to such empowering statute, is given considerably broader authority to treat ailments of the foot, the muscles, and the tendons of the leg governing the functions of the foot. Such treatment, as set forth in such section, may be by medical, mechanical, or surgical means. Also, the section authorizes a limited treatment of the hand.

In such treatments, podiatrists are permitted to use such medicines and drugs as may be necessary. General anaesthetics may be used, but only in colleges of podiatry approved by the medical board and in approved hospitals; however, the use of x-ray or radium for therapeutic purposes is not permitted.

It becomes rather obvious that such section permits a podiatrist to engage in a rather wide range of professional medical activities concerning the foot, leg, and the hand, including surgical treatment. Such activities, we suggest, do in fact require an independent professional skill and judgment in the diagnosis and the treatment of certain physical ailments.

Relating to the sections of law concerned with the standards of educational requirements and qualifications for the practice of podiatry, one may determine the emphasis on training and professional proficiency. As examples of such, podiatrists must complete at least one year of study at a liberal arts college (R. C. 4731.53) and then complete a full course of study at an approved college of podiatry (R. C. 4731.54 and R. C. 4731.55).

Further, a podiatrist must pass an examination conducted by the state medical board (R. C. 4731.56). Such examination must cover the subjects of anatomy, physiology, pathology, chemistry, the uses of local antiseptic preparations and local anaesthetics, analgesics, antibiotics, thera-

peutics, and other appropriate subjects to be determined by the board (R. C. 4731.55).

It would seem clear that the Legislature, having removed the podiatrist from that section of law dealing with "limited branches of medicine," and having enacted specific sections governing the admittance to, and the practice of podiatry, did thereby establish a class of medical professionals who have taken upon themselves by law certain independent professional responsibilities that may be likened to some extent to those that are inherent within the practices of physicians and surgeons.

The fact that a podiatrist is limited in his diagnosis and treatment to two parts of the body, should, for purposes of the statute of limitations, render, for malpractice actions, the podiatrist no less a professional medical practitioner than would be the dentist who limits his practice to the teeth. And, as stated previously, it has been decided in a number of cases in Ohio that dentists fall within the one-year malpractice statute.

Therefore, it is the view of this court, and we so hold, that podiatrists are, pursuant to the law, members of the medical profession for purposes of the application of the statute of limitations on actions for malpractice.

The judgment of the Court of Common Pleas of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and REILLY, J., concur.