390 So.2d 255 (1980)
AMERICAN EMPLOYERS INSURANCE COMPANY, Plaintiff-Appellee-Appellant,
v.
HONEYCUTT FURNITURE COMPANY et al., Defendants-Appellants-Appellees.
No. 7731.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
*256 Brame, Bergstedt & Brame, Joseph A. Brame, Lake Charles, for plaintiff-appellee-appellant.
Dennis R. Sumpter, Sulphur, Stockwell, Sievert, Viccellio, Clements & Shaddock, by Fred H. Sievert, Jr., Lake Charles, for defendants-appellants-appellees.
Before CULPEPPER, SWIFT and DOUCET, JJ.
CULPEPPER, Judge.
Plaintiff, as subrogee of its insured, seeks damages caused by fire to a building used as a furniture store. Originally named as defendants were the lessee, several manufacturers of flourescent light fixtures and the City of Sulphur, Louisiana (the City). Prior to trial, all defendants except the City were dismissed. The issue at trial was whether the fire was caused in part by the negligence of the City through employees of the Sulphur Fire Department. From a judgment dismissing its demands against the City, plaintiff appeals.
The substantial issue on appeal is whether Captain E. J. Rogers, of the Sulphur Fire Department, was negligent in breaking the front door of the building and thereby "venting" the fire without having a sufficient water hose ready.
On June 23, 1975 at approximately 6:00 P.M., the fire occurred in Sulphur in a building owned by Keith M. Lyons and leased to Honeycutt Furniture Company, Inc. The building was approximately 100 feet wide and 50 feet deep with 9-foot ceilings. Mr. Lyons had the building insured against fire loss with plaintiff, American Employers Insurance Company. Plaintiff paid Lyons $65,861 and took a subrogation on which it now sues.
The fire was first observed by two persons on the street. Mr. Freddie Leger happened to be driving by and noticed something peculiar through the large front window. He pulled up to the building, got out of the car and put his face next to the glass. He saw flames which appeared to be coming from behind a couch located some 30 to 40 feet from the window. Going quickly to a nearby phone, he reported the fire to the police and then returned to the store. While waiting for the fire department to arrive, Mr. Leger continued to observe the fire. At first, the fire seemed larger than before. Then the flames appeared to be subsiding and were about two feet high when the firemen arrived, some five minutes later.
Mr. Harry J. Henry was also driving by the store and saw the fire from his car. Just as he pulled off the road, he saw a fire truck arrive at the scene. Both Leger and Henry watched the activities of the two firemen on the truck and gave similar descriptions of the events which followed.
The fire truck was backed up to the store front and two firemen got out immediately. The driver, fireman Sam Miller, got out on one side of the truck and the passenger, Captain E. J. Rogers, got out of the other. Captain Rogers went up to the store, looked in the window, went back to the truck, got an ax and broke the glass out in the front door of the building. Rogers then turned *257 and went toward fireman Miller. Neither Leger nor Henry observed fireman Miller come forward with a hose. At Rogers' direction, however, Miller had gotten a hose ready for use. Before they could reach the building with the hose, the fire increased dramatically in size. One of the front windows popped out and shattered. Then, the other front window popped out. Flames engulfed the building.
The firemen then abandoned the truck hose and attempted to connect another larger hose to a hydrant located some 30 feet away. This hose was too short to reach the hydrant and the firemen had to move the truck twice. Within approximately 20 minutes, the fire was out of control and the building a total loss. Another fire truck with two more firemen arrived too late to assist in putting the fire out.
The truck being used by Miller and Rogers was a pumper truck with a 500 gallon water supply. The first hose they attempted to use was a one-inch "booster line", which was already connected to the truck water supply. This hose can be charged with water from the truck by activating two levers inside the truck cab and can be ready for use as soon as the fireman gets out and pulls the hose off the reels. The truck was also equipped with other hoses, including segments of the 2½ inch hose the men tried to connect to the hydrant.
At the time of the fire, the Sulphur Fire Department, hereafter "SFD", had 17 fire fighters available, including 11 volunteers, and five truck units in operation. On June 25, 1975, there were four regular men on duty, all of whom responded to the calls for this fire.
Plaintiff called two expert witnesses at trial. Mr. Elbert J. Welborn was accepted as an expert in the causes and origins of fires. At the time of trial, Mr. Welborn was District Supervisor for the Louisiana Office of Fire Protection, with some 20 years experience in arson investigation. He had taught classes in arson investigation for local fire departments, Louisiana State University and various insurance companies. Although Mr. Welborn had been present at many fires, he had no personal experience in firefighting. City officials asked Mr. Welborn to investigate and establish the cause of the fire as well as to evaluate the firefighting techniques employed.
In digging through the remnants of the fire, Mr. Welborn found a flourescent light fixture that had the metal wires bonded to the side of the fixture. He also found couches and tables in the area where the fire started had heavier burn patterns on the upper portions of the furniture rather than near the floor. He concluded the fire was started by asphalt dripping from the light fixture onto the furniture.
Based on the observations of witnesses that the fire flames had begun to decrease in size, Mr. Welborn concluded the initial fire was subsiding because of a diminishing supply of oxygen in the closed building. He believed the fire was renewed when Captain Rogers broke open the front door. He explained this act had the effect of "venting" the fire by introducing a fresh supply of oxygen. It was his opinion the fire would have gone out had this new source of oxygen not been introduced. He attributed the ultimate destruction of the building to the delay between "venting" the building and the application of water to the fire. In his opinion, the fire could have been put out if the proper hose had been ready at the time the building was vented.
In teaching arson classes, Mr. Welborn gave instruction about venting fires. He stated it was a paramount rule in fire instruction that one must be prepared to fight a fire before a building is vented. From his investigation and personal conversation with Captain Rogers, Welborn concluded Rogers was not adequately prepared to fight the fire at the time he broke open the door.
Plaintiff's second expert, Mr. Algie Breaux, was accepted as an expert in firefighting techniques. Mr. Breaux was chief training officer for the Lake Charles Fire Department, where he had been employed since 1957. He was also employed by the State of Louisiana to teach and train local *258 fire departments in the Lake Charles area. Prior to the Honeycutt fire, Mr. Breaux had given a class on pumper operations to the SFD. The class included instruction on ventilation of fires. It was established that Captain Rogers attended this course.
Mr. Breaux taught his classes in accordance with guidelines established in fire service manuals referred to as the ISFTA Books or "Red Books" or "the fireman's Bible". These books contain the instruction that a fireman should not open a burning building until there is adequate manpower and charged lines available and personnel are ready to attack the burning building.
In explaining the instructions he gave, Mr. Breaux described a procedure called a "size up." This is an initial evaluation of a fire made by every fireman when he first arrives on the scene. Mr. Breaux stated a "size up" is a matter of judgment and discretion based on the experience and training of the individual fireman.
The object of the "size up" is to determine how much water is needed for a particular fire. Mr. Breaux stated the primary factor to consider in a size up should be the size of the building. A formulae based on the cubic measure of a structure divided by 1,000 is employed to estimate the minimum gallons per min. (GPM) needed. In the case of the Honeycutt building, Mr. Breaux estimated a minimum of 900 GPM was needed. For this reason alone, he stated he would not have attempted to attack the fire in question with the booster hose from the pumper truck.
Mr. Breaux also stated he would not have used the booster hose because of the report of diminished flaming. This would have indicated to him the fire was smouldering from lack of oxygen. Any entry into the building would naturally cause venting and increase the likelihood of a "back draft", an explosion of collected gases released by the introduction of oxygen. The occurrence of a back draft would not only increase the size of the fire beyond the capacity of the booster hose, but would present a serious danger to the firemen. Mr. Breaux was unable to conclude a back draft had actually occurred in this case.
In a "size up" based on his own experience, Mr. Breaux would first have called for more manpower. In his opinion, the two men on the scene could not have operated the equipment necessary to provide the required GPM. Due to the pressure in a water line, one man alone could not have handled a large hose connected to the nearby hydrant. If both men handled the hose, no one was available to regulate the pumping equipment. Mr. Breaux was further doubtful the two men on the second fire truck would have made any difference in the outcome of this fire. He estimated a total of four hoses, or eight men on the hoses, alone, would have been necessary to put the fire out.
Defendant also called two expert witnesses, both of whom were employed by the SFD. Captains Lawrence E. Nix and Cecil D. Miller, were accepted as experts in firefighting techniques. Both agreed with Mr. Breaux that building size was the most important factor in a "size up" and that it would be improper to vent a building without charged hoses ready for use.
Captain Nix had been with the SFD for eight years and testified to procedures in effect at the time of the Honeycutt fire. While he agreed a fireman should be ready with the maximum amount of water necessary to fight a fire for an entire building, he stated it was not always feasible to provide the required amount of water with the manpower available. According to Captain Nix, it was proper procedure in the SFD to rely on the pumper truck and booster line for a fire the size initially observed in the Honeycutt store. In retrospect, he believed at least six men were actually needed for this fire. It was his understanding the four men on duty at the time did respond. Although additional volunteers could have been called, Captain Nix testified none were called.
Captain Miller was serving as chief of the SFD at the time of trial. His previous experience in firefighting was extensive and included service as the chief of the fire department in Franklin, Louisiana for five *259 years. He had also served as Deputy State Fire Marshal. In his capacity as an independent professional fire investigator, Captain Miller had investigated the Honeycutt fire some two weeks after it occurred and made an evaluation of the firefighting techniques employed. His investigation consisted of examining the fire scene and the equipment available to the SFD. He went over the route taken by the responding firemen and visited each fire station.
Captain Miller gave the opinion the SFD was severely undermanned at the time of the fire. He also considered the employees to be relatively inexperienced. In his estimation, the fire department lacked intermediate capability, i. e., there was no capability above the booster line for a fast initial attack on a fire.
In discussing factors relevant to a proper size up, Captain Miller placed great emphasis on time and available resources. He considered the first few minutes of a fire to be the most critical time in firefighting. When asked what he would do if he were one of the two men faced with the fire in question, he stated he would choose the booster line for a fast initial attack. He stated it would have required a minimum of three people to make an attack with the 2½ -inch hose connected to the hydrant.
Defendant also called Captain Emile J. Rogers as a witness. He testified he made his size up after looking in the window of the building. At that time, he believed the fire was small enough to be put out with a chemical extinguisher or the booster line. He elected to use the booster line. Fireman Miller testified he had the booster line ready for use when Captain Rogers broke open the front door. Rogers corroborated this testimony.
Chief Rogers was dismissed from the SFD after the Civil Service Board found him incompetent in the performance of his duty at the Honeycutt fire. The dismissal was appealed and affirmed by this court in Rogers v. Municipal Fire and Police Civil Service Board, 357 So.2d 12 (3rd Cir. 1978).
Plaintiff contends the City is barred from litigating the issue of Rogers' negligence in this case by our affirmation in Rogers, supra, under the doctrine of "the law of the case." We disagree.
Our Supreme Court stated in Day v. Cambell-Grosjean Roofing and Sheet Metal Corporation, 260 La. 325, 256 So.2d 105 (1971), rehearing denied:
"With regard to an appellate court, the `law of the case' refers to a policy by which the court will not, on a subsequent appeal, reconsider prior rulings in the same case. This policy applies only against those who were parties to the case when the former appellate decision was rendered and who thus had their day in court."
Neither the plaintiff nor the defendant in this case were parties in the suit between Rogers and the Civil Service Board. Clearly, the doctrine of "the law of the case" does not apply here.
Plaintiff also contends the City is barred from contesting Rogers' negligence on the basis of certain evidence introduced at trial. Plaintiff produced a letter written by the Mayor of Sulphur containing a statement to the effect that Rogers' performance of duty at the Honeycutt fire was negligent. This letter was prepared for submission against Rogers at the Civil Service proceedings. Mayor Adias Saunier identified the letter at trial but testified he actually had no personal knowledge of the facts stated in the letter. Nevertheless, defendant's objection to introduction of the letter on grounds of hearsay was overruled, subject to the objection. The letter is clearly hearsay and cannot be considered.
Plaintiff argues on appeal that even if the letter is hearsay, the statement in the letter is an admission against interest by an agent of the City and defendant should be bound by the admission under LSA-C.C. Article 2291, which provides:
"The judicial confession is the declaration which the party, or his special attorney in fact, makes in a judicial proceeding.
"It amounts to full proof against him who made it.

*260 "It cannot be divided against him.
"It cannot be revoked, unless it be proved to have been made through an error of fact.
"It cannot be revoked on a pretense of an error in law."
We find the concept of judicial confession is not applicable to this case. A judicial admission or confession, is a party's express acknowledgement of the correctness of the fact or the act charged against him by his adversary. Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967). Civil Code Article 2291 has no application to a party's statement of a conclusion of law. State v. Ward, 314 So.2d 383 (3rd Cir. 1975) rehearing denied, writ refused. We find Mayor Saunier's statement that Rogers was negligent in the performance of his duty was nothing more than an opinion based on facts admittedly not within his own knowledge. Under these circumstances, his statement has no evidentiary value and has no effect on the City's position in this case. See also Sanders v. General American Life Insurance Company, 364 So.2d 1373 (3rd Cir. 1978).
The next issue concerns the correctness of the trial judge's finding Captain Rogers was not negligent in the performance of his duty at the Honeycutt fire. Plaintiff contends this finding is erroneous because the trial judge failed to evaluate Rogers' performance of duty in light of the appropriate standard of conduct. In support of this contention, plaintiff makes a twofold argument. First, plaintiff argues the trial judge erred as a matter of law in determining the standard of care required of firemen in the performance of their duty. Secondly, plaintiff argues the trial judge erred in evaluating the expert testimony submitted as proof of the appropriate standard of care. We will consider these arguments separately.
In his written reasons for judgment, the trial court stated:
"If the employer is to be held negligent for the negligent acts of its employee depends upon the totality of the facts and circumstances in each case. This court must evaluate the fireman's actions against those of ordinary, prudent, and reasonable men placed in the same position as the foremen (sic) and with the same knowledge as the firemen."
From this statement in the written reasons, plaintiff argues the trial judge applied the wrong standard of care. As we understand it, plaintiff contends the trial judge required Captain Rogers to use only the skill and knowledge which he personally possessed, rather than the degree of skill and knowledge exercised by the ordinary firemen in the same general area. From a reading of the trial judge's written reasons as a whole, we do not agree that he used the wrong standard of care. In a further portion of his written reasons, the trial judge stated:
"After hearing the testimony of Mr. E. J. Rogers and the testimony of the experts testifying, the court concludes that his actions could not be compared under the circumstances to the probable actions of an expert such as Mr. Algie Breaux. The firefighting techniques employed by E. J. Rogers may very well have been negligent action if employed by one as experienced as Mr. Breaux.
"Applying the above rules and considering the testimony of the expert and lay witnesses in this case the court is not convinced that the plaintiff has carried its burden of proof that the action of the employee, Mr. E. J. Rogers was negligent in this case; therefore, the City of Sulphur can not be held liable for the acts of its employee."
We conclude the trial judge did use the correct standard of care. He required that Captain Rogers use the same degree of skill and knowledge as would have been exercised by other ordinary, reasonable firemen in the same community. However, he did not require that Captain Rogers exercise the degree of skill and knowledge which would have been used by a highly qualified expert, such as Algie Breaux.
We have found no cases, nor have any been cited by the parties, dealing specifically with the standard of care for firemen. *261 However, we recognize firefighting as an occupation requiring specialized training. Therefore, we find the appropriate standard of care is the same standard applied in the cases of policemen, engineers, architects, deputy sheriffs, attorneys and others engaged in professions requiring the exercise of technical skill. The test is whether he performed his service in accordance with the skill usually exercised by others in his profession in the same general area. See Calandro Development, Inc. v. R. M. Butler Contractor, Inc., 249 So.2d 254 (1st Cir. 1971) and cases cited therein.
Finally, plaintiff contends the trial judge erred in not finding Rogers negligent. Plaintiff primarily relies on testimony of its experts that basic firefighting techniques include (1) having charged hoses ready for use prior to venting a building, (2) estimating the gallons per minute needed on the basis of building size and (3) observing heat and smoke conditions that would indicate the likelihood of a "flash over" or "back draft."
We have carefully studied the entire record. While we recognize the experts testified the ordinary fireman should have knowledge of the above cited techniques, we do not find the expert testimony established the ordinary fireman would have acted upon knowledge of these techniques alone. Plaintiff's expert, Mr. Breaux, was the only firefighting expert who stated positively he would not have pursued the same course of conduct as Captain Rogers. His testimony reveals he regarded any deviation from his own personal standards as an "error", but he did not testify to Rogers' negligence vel non predicated upon local firefighting standards. Breaux clearly stated a "size up" is a matter of judgment based on experience as well as training in firefighting techniques. Captain Miller, the next most experienced firefighter, stated he would probably have acted the same as Captain Rogers. His reasoning was based on his opinion that a speedy attack was crucial to effective firefighting. Captain Miller's opinion was also influenced by the limited manpower available to Rogers and the SFD as a whole at the time of the fire. Captain Nix stated Captain Rogers acted in accordance with procedures acceptable to the SFD at the time. The only expert openly critical of Rogers' performance was Mr. Welborn, who had no personal experience in firefighting.
In analyzing the expert testimony, we find that Captain Miller and Captain Nix actually testified to prevailing local standards among firemen in the Sulphur area. In their opinion, Rogers did not act below those standards. On this point, plaintiff has argued that the testimony of experts Breaux and Welborn are a more reliable indication of standard conduct for firemen than testimony of Captains Miller and Nix. Plaintiff charges Captains Miller and Nix gave a favorable evaluation of Rogers' performance due to their present employment with the SFD. Plaintiff also points out evidence of inconsistencies between the testimony of Miller and Nix at trial and previous statements made at the Civil Service proceedings.
Able counsel for plaintiff makes respectable arguments. This is a close case on the facts. In the final analysis, we are persuaded by the rule of appellate review that we should not reverse the trial judge's finding of fact unless he is manifestly erroneous or clearly wrong. We find no such error here.
For the reasons assigned, the judgment appealed is affirmed at plaintiff's costs.
AFFIRMED.
SWIFT, J., dissents.