481 So.2d 1382 (1986)
Yvonne Lois Boudreaux, Wife of/and Gilford J. BOUDREAUX
v.
Dr. Marilyn J. PANGER, D.C. d/b/a Panger Chiropractic Clinic.
No. 85-CA-518.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
Writ Granted March 14, 1986.
*1383 Stephen J. Caire, Metairie, for plaintiffs-appellees.
Kenneth C. Hughes, New Orleans, for defendant-appellant.
Before KLIEBERT, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This appeal arises from a judgment rendered adversely to defendant, Dr. Marilyn Panger, a licensed chiropractor and in favor of plaintiff, Mrs. Yvonne Boudreaux.
The facts show that plaintiff had a history of back pain radiating into the left leg which had been diagnosed by Dr. George Byram, an orthopedic surgeon, in August, 1980, as degenerative disc disease and a bulging disc with nerve root impingement. At that time, plaintiff's condition was not severe enough to warrant further treatment.
Plaintiff, on her own initiative, sought relief for this discomfort from Dr. Panger on March 25, 1981. She then attended treatment sessions between that date and April 10, 1981, a total of eight visits. Following the initial visit, Dr. Panger diagnosed plaintiff's condition based on plaintiff's history, the physical findings and X-rays, as a bulging disc at L-5-S-1 with suspected sciatic nerve inflamation. Dr. Panger then instituted treatment in the form of massage, ultrasound, spinal manipulation and adjustment.
While these treatments offered temporary and short-lived improvement, plaintiff, on April 10, 1981, experienced extreme and increased pain; and, after two separate treatments of a limited nature on that day, became actually symptomatic. At that time, Dr. Panger placed plaintiff in a corset. Dr. Panger then scheduled plaintiff for another series of chiropractic treatment; however, plaintiff refused to submit to further chiropractic treatment. On April 13, 1985, she sought the intervention of an orthopedic surgeon, Dr. John R. Montz, who was associated with Dr. Byram. Dr. Montz diagnosed her condition as a ruptured disc of L-5, S-1 level, which resulted in a lumbar lamenectomy on April 29, 1985.
On March 17, 1982, plaintiff filed suit against Dr. Panger for malpractice and/or negligence. The case was tried on two days, November 29, 1984 and January 3, 1985. On January 9, 1985, judgment was rendered finding Dr. Panger negligent under the general negligence concepts. The malpractice portion of plaintiff's suit was *1384 dismissed for failure to produce evidence of a standard of care within the profession. Plaintiff was awarded Twenty Thousand Dollars ($20,000) with interest from judicial demand and costs, including expert fees of One Hundred Dollars ($100) each to the testifying physicians.
Subsequently, both defendant and plaintiff perfected appeals of the judgment.
Appellant-defendant, Dr. Marilyn Panger, asserts that the trial court erred in finding a general negligence standard applicable to chiropractors engaged in a professional capacity and in relying on an outdated precedent as controlling in this case, ie., Edkins v. Edwards, 235 So.2d 200 (La. App. 4th Cir.1970).
Cross-appellant-plaintiff alleges that (1) the trial judge erred in dismissing the malpractice portion of petitioner's suit; that
(2) the trial judge erred in finding that petitioner failed to establish by a preponderance of the evidence that the negligent actions of the defendant ruptured plaintiff's disc; that
(3) the trial judge erred in the amount of damages awarded in the judgment to petitioner, Yvonne Lois Boudreaux, and the amount awarded by him to said petitioner was inadequate; that
(4) the trial judge erred in failing to award damages to petitioner, Gilford J. Boudreaux, for the loss of the society with his wife; and that
(5) the trial judge erred in fixing the amount of expert witness fees, which amount was inadequate.
The issue presented by appellant, Dr. Panger, raises the question of whether the general law of negligence can be applied to a licensed chiropractor in the performance of professional duties, where the malpractice of the chiropractor has not been established. We find that the licensed chiropractor, like other professionals practicing in the state of Louisiana, cannot be subjected to a dual risk of liability and must be judged solely within the standards of that profession.
Initially, we note that Black's Law Dictionary, Fifth Edition, 1979, defines malpractice as:
"Malpractice. Professional misconduct or unreasonable lack of skill. This term is usually applied to such conduct by doctors, lawyers and accountants. Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them. It is any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct. Matthews v. Walker, 34 Ohio App.2d 128, 296 N.E.2d 569, 571, 63 O.O.2d 208. See also Discovery rule; Standard of care."
Another source, The Medical Malpractice Act in LSA-R.S. 49:1299.41, provides the following definitions:
"(7) `Tort' means any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill.
"(8) `Malpractice' means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.

*1385 (9) `Health care' means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."
Under general negligence, the standard of care required is that of a reasonable person under like circumstances. Trapani v. State Farm Fire & Cas. Co., 424 So.2d 449 (La.App. 5th Cir.1982), writ den. 430 So.2d 76 (La.App. 5th Cir.1982). In cases involving the malpractice of professionals, however, the standard is generally that of exercising the degree of professional care and skill ordinarily employed by others of the same profession in the same general area. Calandro Development, Inc. v. Butler Contr., Inc., 249 So.2d 254 (La.App. 1st Cir.1971).
Aside from physicians and dentists, the standard has been applied to engineers in Bowman v. Coursey, 433 So.2d 251 (La. App. 1st Cir.1983), writ den. 440 So.2d 151 (La.1983); Calandro, supra; to architects in A.F. Blair, Inc. v. Mason, 406 So.2d 6 (La.App. 1st Cir.1981), writ den. 410 So.2d 1132 (La.1982); prosthetists in Storey v. Lamberts Limbs and Braces, Inc., 426 So.2d 676 (La.App. 1st Cir.1982), writ den. 433 So.2d 152 (La.1983); certified public accountants in Gantt v. Boone, Wellford, Clark, Langschmidt and Pemberton, 559 F.Supp. 1219 (M.D.La.1983); to firemen in American Employers Ins. Co. v. Honeycutt, 390 So.2d 255 (La.App.3d Cir.1980), to attorneys in Muse v. St. Paul Fire and Marine Insurance Co., 328 So.2d 698 (La. App. 1st Cir.1976) to name but a few. Physicians and dentists are subject to the same type of standard, by statute, but are not subject to the locality rule. LSA-R.S. 9:2794.[1]
Numerous other cases involving other medical personnel and non-medical personnel can also be found utilizing the same language for which citation is unnecessary here. However, of note are two cases in which the courts have held non-physicians to the standard of physicians where the actions of defendant have transcended the bounds of the defendant's profession and intruded into the area of physician expertise.
In Fairchild v. Brian, 354 So.2d 675 (La.App. 1st Cir.1977), because an optometrist's activities intruded into the area of medical specialty exercised by opthalmologists, the court applied the standard of care owed by an opthalmologist to determine defendant's negligence. Likewise, a biology professor was held to the standard of care of a physician in Butler v. La. State Board of Education, 331 So.2d 192 (La. App.3d Cir.1976), writ refused 334 So.2d 230 (La.1976). There the court held that the professor who conducted a project which included drawing blood from volunteer students by other students owed the same duty to the volunteer donors as a licensed medical doctor.
In deciding that a chiropractor may be judged by the standards of the general law of negligence, the trial court relied on Edkins v. Edwards, supra, the sole case involving the negligence of a chiropractor in Louisiana. In that case, Ettinger, a chiropractor, allegedly manipulated plaintiff's neck in such a fashion as to cause a cervical disc rupture. The act occurred in 1966 at a time in which chiropractors were required to be licensed and subject to the Medical Practice Act. LSA-R.S. 37:1261 et seq; Edkins, supra. The Edkins court states, in pertinent part:
"... The upshot of these decisions is to the effect that, although the laws of Louisiana do not prohibit the practice of chiropractic, nevertheless any chiropractor, in order to engage in this field must first comply with and be licensed by the Louisiana State Board of Medical Examiners. Since there is no evidence in this *1386 case that the defendants have been so licensed, nor, as aforesaid was any evidence introduced setting out the standard of care required in the practice of chiropractic, we conclude that the defendants in this case, concerning the alleged tortious act, must be judged purely and simply under the tort laws existing in Louisiana, as developed by statute and jurisprudence."
At page 202.
In 1974, however, four years after the case was decided, Chapter 36 of Title 37 regulating Professions and Occupations was added. In that chapter, LSA-R.S. 37:2801 et seq. provides the definition of chiropractic practice, as well as the regulation and licensing of chiropractors. In 1975, the Medical Malpractice Act was enacted which included chiropractors within the definition of health care providers entitled to the benefits of the Act if qualified under the Act. LSA-R.S. 40:1299.41 et seq.
While we recognize that this case does not involve the Medical Malpractice Act, we think the inclusion of chiropractors among those entitled to its protection, along with the chiropractic chapter in the Revised Statutes, clearly evinces a legislative intent to upgrade the heretofore ambiguous status of chiropractors to professionals in the health care area.[2] Furthermore, it is clear from case law since 1974; and since Edkins was decided, that chiropractic treatment has been considered professional treatment. Plaintiffs have been allowed to recover the costs of such treatment in tort and worker's compensation suits. Druilhet v. Trinity Universal Insurance Company, 361 So.2d 40 (La.App. 3d Cir.1978), writ den. 363 So.2d 535 (La.1978); Gourdon v. Rockwood Ins. Co., 368 So.2d 1156 (La.App. 3d Cir.1979); Koslow v. E.R. Desormeaux, Inc., 428 So.2d 1275 (La.App. 3d Cir.1983). In addition, duly licensed chiropractors have testified as to their treatment as part of plaintiff's damages. Avilez v. South Jefferson General Hospital, 403 So.2d 1260 (La.App. 4th Cir.1981); Samanie v. Bourg, 434 So.2d 149 (La.App. 5th Cir.1983), writ den. 435 So.2d 445 (La. 1983); McCarroll v. Asplundh Tree Expert Co., 427 So.2d 880 (La.App. 1st Cir. 1982).
LSA-R.S. 37:2801 defines the practice of chiropractic in pertinent part as:
"... being engaged in the business of employing objective and subjective means to ascertain the alignment of the vertebrae of the human spine, including the use of analytical instruments of demonstrable efficacy for the purpose of analysis, and the practice of adjusting or manipulating the vertebrae and adjacent tissue for the purpose of correcting interference with nerve transmission and expression,...."
The Edkins court was faced with a situation in which chiropractors were not regulated by special statute, nor were they licensed according to standards set by their own profession. Furthermore, the defendant in that case was practicing without a license as mandated by the Louisiana Medical Practice Act. Thus we find the case is distinguishable.
Analysis of cases involving other skilled or educated professionals reveals no cases other than Edkins which have applied the general negligence standard to those causing injury in the practice of the particular profession. In our opinion, that is not remarkable since the "ordinary reasonable man" of the general negligence concept does not possess the requisite knowledge to judge the conduct of a person practicing a skill or profession requiring specialized knowledge and skills.
Thus, based on the jurisprudence, the statutes and other sources herein recited, we are convinced that a licensed chiropractor, like a physician, attorney, architect, engineer, etc. should be judged solely by the standard of the profession. A dual potential for liability would be unjust and inappropriate. As appellant points out, a *1387 doctor of medicine who causes pain in the process of properly applying medical techniques is not necessarily guilty of negligence under the law since those professionals, as well as others, are clearly entitled to the protection the law affords one who practices his or her profession correctly but nevertheless causes some discomfort or even pain. If this were not so, every doctor of medicine who administered an injection, every dentist who pulled a tooth, every chiropractor who made an adjustment, and every lawyer who lost a case would be negligent per se. Acting within the framework of their professions, they must be judged by the standards of that profession.
Consequently, we find the trial court erred in applying general negligence standards to the chiropractor's actions herein.
Turning to plaintiff-appellant's issues for review, the first error assigned involves the question of whether the trial court erred in dismissing the malpractice portion of plaintiff's suit.
The trial court dismissed the malpractice portion of appellant's case for failing to produce evidence as to the standard of care in the chiropractic profession. In an action for malpractice, the burden is on the plaintiff to prove the degree of care and skill required by the profession as well as the failure of the professional to exercise the degree of care required. Calandro Development, Inc., supra. Where no evidence of the professional standard of care is produced, the court cannot determine that the professional is negligent. A.F. Blair, Inc. v. Mason, supra.[3] Evidence is generally produced by the testimony of others in the same profession. See Storey, supra; Bowman v. Coursey, supra.
In this regard, appellant argues that the medical testimony of an orthopedic surgeon is sufficient to show a standard of care of chiropractors and/or that the standard was negligent. Appellant also argues that defendant chiropractor exceeded the scope of her expertise and intruded into the practice of medicine.
The evidence produced by plaintiff-appellant included the testimony of two orthopedic surgeons, but did not include chiropractic testimony as to the standards of the chiropractic profession. We agree with the trial judge that the lack of testimony by a licensed chiropractor defeats appellant's malpractice case. While the orthopedic surgeons certainly are experts in their own field, neither physician admitted to any expertise or skill in manipulation of the vertebrae as defined for chiropractors by LSA-R.S. 37:2801. While both physicians indicated that the treatment of plaintiff-appellant's condition of degenerative disc disease with nerve root impingement was contraindicated, defendant-appellee produced the testimony of a chiropractor, Dr. Leroy Stagni, who stated that he has successfully treated bulging discs by manipulation. Both appellee, Dr. Panger, and Dr. Stagni stated that the purpose of the manipulation is to relieve pressure on the nerve. Both the description of the treatment (massage, ultrasound and manipulation) by the chiropractors, Dr. Panger (appellee) and Dr. Stagni, coincide with the description of allowable treatment by chiropractors in LSA-R.S. 37:2801.
Consequently we cannot agree that the medical testimony was sufficient to show either a standard of chiropractic care or a negligent standard of chiropractic care.
We also find unpersuasive appellant's argument that defendant-appellee intruded into the practice of medicine, and thus should be held to the standard of care of a physician, citing Fairchild, supra.
The facts relied on by appellant in this regard are that:
(1) Dr. Panger admitted that she was attempting to correct a bulging disc, whereas the orthopedic testimony denied *1388 that bulging disc is correctable by any method; and that
(2) Dr. Panger advised appellant to use muscle relaxants which was a determination not within the scope of chiropractic practice.
The record reveals that Dr. Panger did state that she was attempting to correct the bulging disc; however she qualified that statement by testifying that she was attempting to relieve the pressure on the nerve from the disc. She furthermore stated that on April 10, when appellant's symptoms became severe, she recommended appellant see an orthopedic surgeon because she thought appellant might receive some relief from anti-inflammatory medication and/or muscle relaxants. Since April 10, 1981 was a Friday, she intended to treat appellant until appellant could visit the orthopedic physician on the following Monday.
We do not find that Dr. Panger's actions indicated an intrusion into the field of medicine. Consequently, the application of a physician's standard of care to the chiropractor Dr. Panger is not warranted.
Because of our findings herein, that malpractice is the sole means of recovery against the licensed chiropractor for damages in the performance of chiropractic practice and that the plaintiff failed its burden of proof in this regard, we need not address Nos. 2, 3 and 4 of plaintiff-appellant's other issues as a reversal on liability is mandated.
The final issue raised by plaintiff-appellant involves the trial court's assessment of expert fees. It is well established that the fixing of the amount of an expert witness's fee is within the sound discretion of the trial court; and, absent an abuse of discretion, the Court of Appeal will not disturb the expert fee award. Pike v. Stephens Imports, Inc., 448 So.2d 738 (La. App. 4th Cir.1984); Whipple v. Smith, 428 So.2d 1114 (La.App. 1st Cir.1983), writ den. 433 So.2d 154 (La.1983); LSA-R.S. 13:3666. As we find that the trial court did not abuse its discretion in this case, we decline to disturb the award of expert fees.
For the foregoing reasons and after a review of the law and evidence, the judgment of the trial court is hereby reversed as to the finding of defendant's liability under general negligence, amended as to costs with both parties bearing their costs of trial, and affirmed in all other respects. Each party is to bear its own costs on appeal.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART AND RENDERED AS AMENDED.
NOTES
[1] LSA-R.S. 9:2794 delineates the burden of proof in a malpractice action based on the negligence of a physician or dentist. In 1985, Act 709 of the legislature amended the statute to include licensed chiropractors. While since this case arose prior to the effective date of the amended statute (September 6, 1985), it does not apply.
[2] We are supported in the conclusion by the enactment of Act 709, 1985, amending LSA-R.S. 9:2794 as mentioned in Footnote 1.
[3] One exception to this rule may be found in attorney malpractice where the judge is competent to determine the issue without evidence. Muse v. St. Paul Fire and Marine Ins. Co., 328 So.2d 698 (La.App. 1st Cir.1976).