490 So.2d 1083 (1986)
Yvonne Lois Boudreaux, wife of/and Gilford J. BOUDREAUX
v.
Dr. Marilyn J. PANGER, D.C. d/b/a Panger Chiropractic Clinic.
No. 86-C-0244.
Supreme Court of Louisiana.
June 23, 1986.
Stephen J. Caire, New Orleans, for applicant.
Kenneth C. Hughes, New Orleans, for respondent.
DIXON, Chief Justice.
Yvonne Boudreaux and her husband filed suit against Dr. Marilyn Panger, a chiropractor, alleging negligent treatment and malpractice. After trial the district court ruled that the plaintiff failed in her malpractice claim because she introduced no evidence that the defendant breached the standard of care ordinarily used by chiropractors in the community. However, the court did find that Dr. Panger was negligent in continuing to treat Mrs. Boudreaux, given her "precarious physical condition" *1084 and her "failure to improve materially." The district judge awarded the plaintiff $20,000 in general damages for pain and suffering.
Both parties appealed. The court of appeal affirmed in part, holding that the defendant chiropractor should only be judged by the standards of her profession, and that the plaintiff had not met her burden of proof as to that standard. Further, the court held that as a matter of law, "general negligence" of the chiropractor is not available as a basis of recovery for the plaintiff; the court reversed the award of general damages. Boudreaux v. Panger, 481 So.2d 1382 (La.App. 5th Cir.1986).
Writs were granted on the plaintiffs' application. 484 So.2d 130 (La.1986).
The plaintiff accepted treatment from Dr. Panger after an orthopedic surgeon failed to give her complete relief from a persistent leg pain. Several months earlier, before turning to Dr. Panger, Mrs. Boudreaux had visited Dr. George Byram, an orthopedic surgeon. He diagnosed her as having degenerative disc disease with nerve root impingement. He recommended Mrs. Boudreaux take aspirin and instructed her on the proper care of her back.
On March 25, 1981 Dr. Panger conducted a chiropractic examination and reviewed Mrs. Boudreaux's x-rays, then told Mrs. Boudreaux she had a degenerative disc, possibly with nerve impingement. She recommended a course of chiropractic care requiring treatments almost every other day. Each treatment consisted of a massage, heat and a "manipulation" which varied from mild pressure to a sudden jolt, the ostensible object of which was to "realign" the vertebrae. The plaintiff testified her pain was considerably relieved after a treatment on April 6. Another scheduled treatment on April 8 was uneventful, but on the morning of April 10 the plaintiff's pain was so severe she could not dress herself. After two treatments that day, the plaintiff sought the aid of an orthopedic surgeon, who administered conservative treatment for a few days, ordered a myelogram, diagnosed a ruptured disc, and performed a laminectomy.
The first issue in this case is a determination of the standard of care to be observed by the defendant chiropractor. The standard of delictual responsibility owed by all persons is set out in C.C. 2315 and 2316. Article 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
Under these articles the elements of a cause of action are fault, causation and damage. Causation requires a determination that the conduct complained of is actually a cause of the harm. Fault is determined by the existence of a legal duty to guard against a certain risk and a breach of that duty. Vicknair v. Hibernia Building Corp., 479 So.2d 904, 908 (La.1985). "In all cases, duty can be stated generally as the obligation to conform to the standard of conduct of a reasonable man under like circumstances." Seals v. Morris, 410 So.2d 715, 718 (La.1982).
When considering the liability of someone who holds himself out as a professional, it is accepted that the "standard of conduct of a reasonable man under like circumstances" requires that the professional exercise the care and skill of like professionals practicing in the same general locality. A violation of this standard is commonly referred to as malpractice.
The standard for malpractice involving doctors and dentists has been set out in detail by the legislature. R.S. 40:1299.41, the Medical Malpractice Act, defines malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered, by a health care provider, to a patient...." Under the act, a tort is:
"... any breach of duty or any negligent act or omission proximately causing injury or damage to another. The standard of care required of every health care *1085 provider, except a hospital, in rendering professional services or health care to a patient, shall be to exercise that degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill."
By its provisions the act is applicable to licensed health care providers including doctors, dentists and chiropractors.
Additionally, the legislature had previously stated in R.S. 9:2794 that in a malpractice action against a doctor or dentist, the plaintiff has the burden of proving:
"(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred."
By Act 709 of 1985 the legislature amended and reenacted R.S. 9:2794 specifically to include "chiropractic physicians." At least after 1985, the standard of care applied to chiropractors is the same as that applied to physicians and dentists. Since 1975 when the Medical Malpractice Act was enacted, it has been the clear intent of the legislature to treat chiropractors the same as doctors and dentists in malpractice suits. This intent culminated in the passage of Act 709.
Even were we to find that a different standard of care at one time applied to chiropractors as opposed to doctors and dentists, we would be constrained to find Act 709, which became effective after the facts of this case arose, entitled to retrospective effect. In Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331, 1338-39 (La.1978), we found the original statute, R.S. 9:2794, was interpretive because it did not establish new rights and duties but merely determined the meaning of existing laws. Hence, the statute was an exception to the general rule that laws are to be applied prospectively. C.C. 8. Considering the inclusion of chiropractors in other sections of the state's medical malpractice scheme, we could not find this amendment to one part of that scheme different in substance from the existing statute.
We therefore hold that a chiropractor is required to exercise the degree of care and skill ordinarily exercised by other chiropractors in a similar community. Pursuant to R.S. 9:2794, the plaintiff in an action against a chiropractor has the burden of proving the standard of care, and a violation of that standard.
The trial judge and the court of appeal ruled correctly that the plaintiff had not met her burden of proof as to malpractice. The only evidence as to that standard consisted of the testimony of two orthopedic surgeons. Both of these experts admitted they had no formal training in the manipulatory techniques of chiropractors and that they were at best familiar with those techniques. This is not sufficient to establish a standard of chiropractic care.
The plaintiff's theory, adopted by the trial judge, was that the defendant herself diagnosed the plaintiff's condition as degenerative disc disease, possibly with a bulging disc impinging on the sciatic nerve, but continued her treatment of massage and "manipulations." The inference *1086 is that the plaintiff's ruptured disc would not have occurred if the chiropractic treatment had been terminated when diagnosed. The record supports no such conclusion: if it did, we would have a different case before us.
Dr. Byram, the first specialist to treat Mrs. Boudreaux, testified that he normally recommends against "manipulation" when a patient suffers from nerve root impingement. His associate, Dr. John Montz, who diagnosed the plaintiff's ruptured disc, testified that the manipulations performed on the plaintiff definitely are not recommended for patients with evidence of nerve root involvement. He conceded that there was no way to definitely state that the manipulation caused the plaintiff's ruptured disc. It could have been caused by a "sneeze or a cough." Further, he added that nothing "corrects a bulging in the disc." He said a bulging disc generally scars over and this scarring makes the bulge less symptomatic.
The defendant's expert was Dr. Leroy Stagni, a doctor of chiropractic since 1971. He testified that the chiropractor's goal in treating degenerative discs was to move the disc to allow nature to heal the disc material. Stagni was clear that chiropractors do not "heal" the disc through "manipulation;" rather, the procedure merely mobilizes the joint to allow the body to heal the disc. Dr. Stagni said that if it is determined the manipulation is not helping the patient, the patient is referred to other specialists.
The record does not support a conclusion that the defendant's continued treatment was the cause of the plaintiff's injury, nor that the treatment was a violation of the community standard of chiropractic care.
In other assignments of error the plaintiff appears to question the trial court's setting of expert fees and the appellate court's taxing each party for costs in the appeal. These are issues within the discretion of those courts, C.C.P. 2164, and the plaintiff does not prove that the courts abused their discretion.
For these reasons, the judgment of the court of appeal reversing the award of general damages is affirmed; the costs of this review are assessed to the plaintiffs-relators.
DENNIS, J., concurs and assigns reasons.
LEMMON, J., concurs.
DENNIS, Justice, concurring.
I respectfully disagree with the majority opinion's implication that the Civil Code principle of fault is limited by a locality rule.