SAVOIE, Judge.
This is a chiropractic malpractice suit. Plaintiffs, Mary and John Piazza, Jr., filed suit seeking to recover damages for the injuries she allegedly sustained due to chiropractic malpractice. Named as defendants in the suit were Behrman Chiropractic Clinic Inc. (Behrman); Dr. Christopher Rasmussen, the chiropractor who treated Mrs. Piazza and an alleged employee of Behrman; and National Chiropractic Mutual Insurance Company (NCMIC), the insurer of Dr. Rasmussen.
Plaintiffs alleged that Mrs. Piazza sustained a ruptured disc at the L4-5 level in her lower back due to treatment performed by Dr. Rasmussen at the Behrman clinic in March, 1986. Plaintiffs alleged that Dr. Rasmussen was liable to them because he had committed malpractice and that Behr-man was liable because it was Dr. Rasmussen’s employer. Plaintiffs also alleged that the defendants were liable due to their failure to obtain Mrs. Piazza’s informed consent to Dr. Rasmussen’s treatment.
The case was tried before a jury, which rendered a verdict in favor of the plaintiffs. In response to interrogatories, the jury found that Dr. Rasmussen committed malpractice which caused Mrs. Piazza’s back injury and that Dr. Rasmussen failed to *1192 obtain Mrs. Piazza's informed consent to her March, 1986 treatment, but that this failure was not a proximate cause of her injuries. The jury awarded Mrs. Piazza the following damages: $65,000.00, mental and physical pain and suffering, past and future; $8,500.00, medical expenses, past and future; $28,000.00, disability, past and future; and $4,000.00, future loss of earning capacity. The jury awarded Mr. Piazza $6,100.00 in damages for loss of consortium, past and future. The jury found that Dr. Rasmussen was an employee of Behr-man when he rendered treatment to Mrs. Piazza. The judge rendered judgment against all the defendants in solido in accordance with the jury verdict.
From this judgment, the defendants have appealed and the plaintiffs have answered the appeal. Dr. Rasmussen and NCMIC raise the following as error on appeal:
1. The trial judge erred in allowing Dr. Herbert Poinsett to testify and give expert opinions as to the alleged malpractice of Dr. Rasmussen.
2. The trial judge erred in finding Dr. Rasmussen guilty of malpractice on the basis that he failed to refer Mrs. Piazza to another physician because no proof was presented that a referral would have resulted in more beneficial treatment.
3. The jury erred in finding that Dr. Poinsett’s testimony evidenced malpractice by Dr. Rasmussen.
4. The trial judge erred in instructing the jury on loss of future earnings or earning capacity.
Behrman raised these same assignments of error on appeal, but also raised as error the jury’s finding that Dr. Rasmussen was an employee of Behrman. The plaintiffs answered the appeal contending that the damages awarded by the jury were inadequate and should be increased, and that the jury erred in finding that the failure to obtain Mrs. Piazza’s informed consent was not a proximate cause of her injuries.
According to the testimony, the undisputed facts are as follows. Mrs. Piazza saw Dr. Rasmussen from December 28, 1984, through July 24, 1985, and again in October, 1985. Her primary complaint was of neck, shoulder and arm pain; her secondary complaint was of lower back pain. In this time period, Dr. Rasmussen saw Mrs. Piazza 53 times, and he adjusted her lower back 38 times. In March, 1986, Mrs. Piazza returned to Dr. Rasmussen with complaints of neck pain; she claimed that he adjusted her lower back in March, and that she was injured on her last visit on March 24, 1986. On April 28, 1986, Mrs. Piazza saw a general practitioner, Dr. William Marmande, who had treated her since November, 1983, and who had previously diagnosed her as having degenerative disc disease at L5. Mrs. Piazza went to Dr. Mar-mande because she was suffering from excruciating pain in her lower back and right leg; Dr. Marmande referred her to Dr. Glenn Manceaux, another chiropractor, for her lower back problem. On June 12, 1986, Mrs. Piazza saw Dr. Del Walker, an orthopedic surgeon. A CT scan revealed that Mrs. Piazza had a large 9 millimeter disc herniation. Dr. Walker performed an L4-L5 laminectomy and discectomy on June 24, 1986. Because of a flare-up of pain, Mrs. Piazza had an epidural steroid injection on June 7, 1988. Dr. Walker assigned a 15% disability to the body as a result of Mrs. Piazza’s surgery and her condition; he also put restrictions on her physical activity.
ASSIGNMENT OF ERROR NO. 1
The defendants contend that the trial judge erred in overruling their objections to the admissibility of the testimony of Dr. Herbert Poinsett, the plaintiffs’ expert witness on the standard of care which Dr. Rasmussen should have employed and his alleged malpractice. The defendants contend that the testimony should not have been admitted because Dr. Poinsett was not qualified to render an expert opinion as to Dr. Rasmussen’s care based on LSA-R.S. 9:2794(A). LSA-R.S. 9:2794 reads in pertinent part as follows:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
*1193 (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
Nothing in the record indicates that Dr. Rasmussen was a specialist within the field of chiropractic medicine. Therefore, we find that the plaintiffs had the burden of proving “[t]he degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances.” LSA-R.S. 9:2794(A)1; see also Boudreaux v. Panger, 490 So.2d 1083, 1085 (La.1986) and Tabor v. Doctors Memorial Hospital, 501 So.2d 243, 245 (La.App. 1st Cir.1986). The statute embodies what is known as the locality rule for all physicians, dentists, or chiropractors who are not specialists. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978). Specialists are required to adhere to a standard of care within the specialty itself, regardless of the locality where the treatment was performed. Ardoin, 360 So.2d at 1335.
The plaintiffs contend that chiropractic physicians are considered a medical specialty for purposes of LSA-R.S. 9:2794(A)1 because they contend that the trial testimony established that the standard of care for chiropractors is the same throughout the country. We do not agree with the plaintiffs’ interpretation that chiropractic physicians are considered a medical specialty for purposes of LSA-R.S. 9:2794(A)1. The first part of subsection (1) of the statute sets out the burden of proof for a plaintiff as to a non-specialist and applies this standard to physicians, dentists and chiropractors. The second part of subsection (1) sets out the burden of proof where the defendant practices a particular specialty and the acts of negligence raise issues peculiar to the specialty; this burden of proof applies to “physicians, dentists, or chiropractic physicians within the involved medical specialty.” Had the legislature intended for all chiropractic physicians to be considered specialists (which is what the plaintiffs appear to be contending), it would not have listed them at all in the first part of subsection (1) and would have simply said in the second part of subsection (1) that the burden of proof applicable to specialists also applies to chiropractic physicians. Thus, we disagree with the plaintiffs’ contention that chiropractic physicians are a medical specialty and we find that the plaintiffs must meet the burden of proof in the first part of subsection (1) of LSA-R.S. 9:2794(A).
The defendants contend that Dr. Poinsett did not meet the locality standard in the first part of LSA-R.S. 9:2794(A)1 and that his testimony should not have been admitted. The defendants base their contention on the following testimony adduced at trial. Dr. Poinsett was not and never had been licensed to practice in Louisiana. At the time of the alleged incident, Dr. Rasmussen was practicing in Houma, Louisiana. Dr. Poinsett had never practiced in Louisiana, and during the years he was a practicing chiropractor, he practiced in Denver, Colorado, Long Island, New York, and Hollywood, Florida, which is a suburb of Miami. Dr. Poinsett did not testify that the standard of care practiced in these areas was like the standard of care practiced in Hou-ma. Dr. Poinsett had not been actively practicing as a chiropractor since 1983; while he lived in Georgia at the time of trial, he did maintain his Florida chiropractic license. The alleged malpractice involving Dr. Rasmussen occurred in 1986, and the trial took place in 1989. Thus, defendants argue that Dr. Poinsett was not qualified to testify as to the standard of care which should be exercised by a chiropractor “actively practicing in a similar *1194 community or locale and under similar circumstances.”
Plaintiffs point out that at trial, Dr. Rasmussen testified that there are no chiropractic colleges in Louisiana and that there are only fifteen or twenty chiropractic colleges in the United States. All three chiropractors who testified — Dr. Rasmussen, Dr. Poinsett, and Dr. Manceaux, who treated Mrs. Piazza after Dr. Rasmussen — obtained their doctor of chiropractic degrees from out of state institutions. Plaintiffs contend that Dr. Rasmussen testified that chiropractic schools teach chiropractors one standard of care and that Dr. Rasmussen testified that the standard of care he practiced in five different cities in different states (Kansas City, New Orleans, Houma, Indianapolis, and Jeffersonville, Indiana) was the same in all those places. Dr. Man-ceaux, a practicing chiropractor in Houma, also corroborated Dr. Rasmussen’s testimony that chiropractic schools teach chiropractors the same standard of care. Dr. Manceaux further testified that there was no difference in the standard of care for a chiropractor in Houma or in New Orleans. Based on this testimony, plaintiffs argue that Dr. Poinsett’s testimony as to the standard of care would be relevant to the standard of care practiced in Houma.
Defendants counter the plaintiffs’ arguments by citing Dr. Rasmussen’s testimony that in smaller towns as opposed to larger towns, the chiropractor is responsible for treating a wider variety of conditions because the referral systems are not as great. The defendants argue that this distinction goes to the heart of Dr. Poinsett’s opinion that Dr. Rasmussen had committed malpractice because he failed to refer Mrs. Piazza to another doctor. Furthermore, defendants point out that as to Dr. Man-ceaux, his opinion that chiropractic care was the same everywhere had no foundation since the only place he had ever practiced was Houma.
A trial judge has much discretion in determining whether to qualify a witness as an expert, and his judgment will not be disturbed by this court unless clearly erroneous. Anthony v. Hospital Service District No. 1, 477 So.2d 1180 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986). Nevertheless, we find that the trial judge did err in admitting Dr. Poin-sett’s testimony. Dr. Poinsett was not actively practicing at the time of the alleged malpractice, nor had he done so for a number of years. More importantly, Dr. Poin-sett had never practiced in Louisiana, nor did his testimony show that he had practiced in a locale similar to Houma. Therefore, Dr. Poinsett could not testify as to “[t]he degree of knowledge or skill possessed or the degree of care ordinarily exercised by ... chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances.” LSA-R.S. 9:2794(A)1 (emphasis ours). The defendant’s testimony that the standard of care he practiced in Houma was the same as that in five other cities, three of which were outside of Louisiana, is irrelevant to Dr. Poinsett’s qualifications to testify under the locality rule. To find that Dr. Poinsett was qualified to testify based on' the other chiropractors’ testimony that the standard of care was uniform would be to ignore the requirements of the locality rule as to non-specialist chiropractors set forth in LSA-R.S. 9:2794(A)1.
For these reasons, the trial judge erred in admitting the testimony of Dr. Poinsett and the defendants’ assignment of error has merit.
DEFENDANTS’ REMAINING ASSIGNMENTS OF ERROR
Because of our ruling as to the defendants’ first assignment of error, we preter-mit discussion of their remaining assignments of error. Without Dr. Poinsett’s testimony, the plaintiffs do not meet the burden of proof imposed on them by LSA-R.S. 9:2794(A)1.
According to the jurisprudence, in a medical malpractice action, the opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are generally *1195 necessary to determine whether a physician possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. LeBlanc v. Krupkin, 555 So.2d 600 (La.App. 1st Cir.1989), writ denied, 558 So.2d 603 (La.1990). According to LeBlanc, “Expert testimony to establish a standard of care is unnecessary when a physician does an obviously negligent act from which lay persons can infer negligence, such as: ‘fracturing a leg during an examination; amputating the wrong arm; carelessly dropping a knife, scalpel, or acid on a patient; or leaving a sponge in a patient’s body.’ ” LeBlanc, 555 So.2d at 603, citing Hastings v. Baton Rouge General Hospital, 498 So.2d 713, 719 (La.1986). In this case, it is not possible for a lay person to infer negligence in the chiropractic treatment given by Dr. Rasmussen; expert testimony is necessary. Without the testimony of Dr. Poinsett, expert testimony is lacking, and the plaintiffs have failed to meet their burden of proof as to Dr. Rasmussen’s alleged negligence. We therefore must reverse the jury’s finding that Dr. Rasmussen committed malpractice.
PLAINTIFFS’ SECOND ASSIGNMENT OF ERROR IN THEIR ANSWER TO THE APPEAL
Plaintiffs contend that the jury erred in finding that the lack of informed consent was not a cause of Mrs. Piazza’s injuries. In order to recover due to a lack of informed consent, the plaintiffs must show that a reasonable patient in the plaintiff’s position would not have consented to the treatment or procedure had the material information and risks been disclosed. Hondroulis v. Schumacher, on rehearing, 553 So.2d 398, 412 (La.1988). After a thorough review of the evidence, we believe that the jury believed that Mrs. Piazza would have consented to Dr. Rasmussen’s treatment even if the material risks had been disclosed. The jury was aware that Mrs. Piazza had seen Dr. Rasmussen 53 times, and had received the same treatment without injury, and was further aware that she saw another chiropractor even after sustaining the injury; the jury could have inferred that the treatments were helping Mrs. Piazza because she kept seeing Dr. Rasmussen. The jury could then infer that Mrs. Piazza would have believed that the chances of a disc herniation occurring were small, and that the benefits she received from the treatments outweighed the risk. Although Mrs. Piazza testified that if she had known the risk she would not have undergone the treatment, the courts employ an objective standard of causation because of the likelihood of a patient’s bias in testifying in hindsight on this hypothetical matter. Hondroulis, 553 So.2d at 412. The plaintiffs argue that this case is analogous to Harwell v. Pittman, 428 So.2d 1049 (La.App. 1st Cir.), writ denied, 434 So.2d 1092 (La.1983); we disagree, finding the Harwell case distinguishable.[1] The plaintiffs’ assignment of error has no merit.
We pretermit discussion of the plaintiffs’ first assignment of error in answer to the appeal, based on our previous rulings.
For these reasons, the judgment of the trial court finding all the defendants liable based on malpractice is reversed, and the judgment of the trial court finding the defendants not liable based on informed consent is affirmed. All costs of this appeal to be paid by the plaintiffs.
*1196 REVERSED IN PART AND AFFIRMED IN PART.

. In Harwell v. Pittman, 428 So.2d 1049 (La.App. 1st Cir.), writ denied, 434 So.2d 1092 (La.1983), this court reversed the trial court's judgment in favor of the defendant physician on the issue of informed consent, finding that the plaintiff who underwent non-emergency gallbladder surgery would not have done so at that time had he been informed of the material risks of post-operation infection and incisional herniation, which were greater risks to this patient due to his obesity, and had he been informed of the alternative treatment of medical management.
As earlier stated, based on Mrs. Piazza's successful course of treatment before her injury as well as her visits to a chiropractor after her injury, we believe that the jury did not err in finding that she would have consented to the treatment even if the material risks had been disclosed to her. Unlike Harwell, Mrs. Piazza underwent the identical treatment which injured her without incident many times prior to her injury, a factor which we believe would have weighed heavily in her decision to continue to undergo the treatment.