601 So.2d 1378 (1992)
Mary and John PIAZZA, Jr.
v.
BEHRMAN CHIROPRACTIC CLINIC, INC. and Dr. Chris Rasmussen.
No. 92-C-0296.
Supreme Court of Louisiana.
July 1, 1992.
*1379 Michael J. Samanie, Wilson H. Barnes, Samanie, Barnes & Allen, Houma, for applicants.
John E. McAuliffee, Jr., Bienvenu, Foster, Ryan & O'Bannon, New Orleans, John David Schoonenberg, Houma, for respondents.
CALOGERO, Chief Justice.
We granted writs in this chiropractic malpractice case to determine whether the court of appeal correctly interpreted and applied La.R.S. 9:2794(A)(1) which governs the burden of proof in malpractice actions based on the negligence of physicians, dentists, and chiropractic physicians. The district court allowed the testimony of the plaintiffs' expert chiropractic witness. The jury ruled for plaintiffs, and the district court rendered judgment awarding damages. The court of appeal reversed, 588 So.2d 1190, concluding that plaintiffs' expert should not have been allowed to testify, that plaintiffs had not met the requirements of the statute for establishing the appropriate standard of care by which to evaluate defendant's professional conduct, and that absent the expert testimony, plaintiffs had not proven their case.
That decision to exclude plaintiffs' expert, Dr. Poinsett, was premised on two factors. The first was that he was not actively practicing at the time of the alleged malpractice, and the second was that Dr. Poinsett had never practiced in Louisiana nor did plaintiffs show that he had practiced in a locale similar to Houma, Louisiana.
La.R.S. 9:2794, which prescribes the plaintiff's burden of proof for malpractice actions, addresses the requisite degree of care for physicians, dentists and chiropractic physicians generally, and for medical specialists. It provides in part:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge and skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care *1380 ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
Note that the first part of La.R.S. 2794(A)(1) governs non-specialists and requires that the degree of care to which the physician, dentist or chiropractic physician is to be held is based upon the standard of practice in a similar community or locale and under similar circumstances. This is referred to as the "locality rule." The second part of La.R.S. 2794(A)(1) governs specialists and requires the degree of care in that instance to be that which is practiced "within the involved medical specialty." Upon reviewing the statute and the record in this case, we conclude that plaintiffs presented a qualified expert, and with his and other testimony, met their burden of proving the standard of care ordinarily practiced by chiropractic physicians in a community similar to Houma, Louisiana. Therefore, the court of appeal erred in reversing the trial judge's decision to permit testimony by the plaintiff's expert witness, Dr. Poinsett. We reverse the court of appeal's judgment and reinstate the jury verdict and district court judgment in favor of plaintiff.
Mary and John Piazza sued Behrman Chiropractic Clinic in Houma, its insurer and the clinic's employee, Dr. Rasmussen, for chiropractic malpractice after Mrs. Piazza suffered a ruptured disc following allegedly negligent treatment by Dr. Rasmussen in March, 1986. Plaintiffs alleged, and their expert agreed, that Dr. Rasmussen's chiropractic manipulation of Mrs. Piazza's spine was contraindicated given her particular complaints (lower back pain), her age, and her weight. Additionally, plaintiffs and their expert alleged that Dr. Rasmussen was negligent in failing to refer Mrs. Piazza to a chiropractor or an orthopedist who specialized in lower back problems to obtain consultation from a specialist prior to treating Mrs. Piazza with the regular chiropractic adjustments.[1] Plaintiffs also contended that defendants were liable because of their failure to obtain Mrs. Piazza's informed consent.
The jury found that Dr. Rasmussen committed malpractice which caused Mrs. Piazza's back injury and that defendants did not properly obtain Mrs. Piazza's informed consent, but that the failure to secure her informed consent was not a proximate cause of her injury. The jury awarded Mrs. Piazza the following damages: $65,000 for mental and physical pain and suffering; $8,500 medical expenses, past and future; $28,000 for disability, past and future; and $4,000 for future loss of earning capacity. The jury also awarded Mr. Piazza $6,100 for loss of consortium. The trial judge rendered judgment against all the defendants in solido in accordance with the jury verdict.
The court of appeal reversed the finding of liability on the part of the defendants while agreeing with the jury's finding the defendants not liable based upon lack of informed consent. The court of appeal concluded that the district court erred in allowing the testimony of the plaintiffs' chiropractic expert, Dr. Poinsett, and that without that testimony, plaintiffs had failed to meet their burden of proof regarding Dr. Rasmussen's alleged negligence.
As its reason for reversing the district court's judgment allowing Dr. Poinsett's testimony, the court stated:
Dr. Poinsett was not actively practicing at the time of the alleged malpractice, nor had he done so for a number of years. More importantly, Dr. Poinsett had never practiced in Louisiana, nor did his testimony show that he had practiced in a locale similar to Houma. Therefore, Dr. Poinsett could not testify as to [the appropriate standard of care pursuant to La.R.S. 9:2794(A)(1) ].
This court discussed the locality rule and medical specialties in Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La. 1978). At that time, we stated:

*1381 By refusing to adopt a standard tied to locality for specialists, the legislature simply may have chosen to recognize the realities of medical life. The various medical specialties have established uniform requirements for certification. The national boards dictate the length of residency training, subjects to be covered, and the examinations given to the candidates for certification. Thus the medical profession itself recognizes national standards for specialists that are not determined by geography.... It is evident, in fact, that a locality rule for specialists would not be rooted in reality.
Id. at 1337, 1338 (emphasis added). Thus, this court concluded that at least as regards medical specialists, the locality rule is not applicable.
According to the testimony of all three of the chiropractors in this case (including, especially, the defendant himself), there are only a few institutions around the country which train chiropractors and a common methodology is taught chiropractors at these training institutions. The chiropractors also testified that they would treat someone in one part of the country the same as if that person were being treated in another part of the country.[2] There is, accordingly, a common standard applicable to the practice of generalist chiropractic medicine in every community around the country. At least, this was the essence of the testimony not only of plaintiffs' expert, Dr. Poinsett, but also of the Houma chiropractor presented by plaintiffs, and the defendant chiropractor himself.
We, thus, look to the record for guidance. All of the chiropractors testified that there is but one uniform standard of training and practice for chiropractic physicians, regardless of the size or location of the community in which they practice.[3] Plaintiffs' expert, Dr. Poinsett, was knowledgable about the standard of care for chiropractors around the country. Therefore, it was appropriate that he give expert testimony regarding that standard and, correspondingly, the standard for Houma, Louisiana.
Regarding the court of appeal's stated concern that Dr. Poinsett had not been actively practicing in the last few years prior to the alleged malpractice of Dr. Rasmussen,[4] it should be noted that the *1382 statute does not require the expert to be actively practicing. The statute merely states that "the plaintiff shall have the burden of proving [t]he degree of knowledge and skill possessed or the degree of care ordinarily exercised by ... chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances." The "actively practicing" requirement refers to the defendant chiropractor and those practicing general chiropractic medicine in his or her community, not to the expert. Nowhere does La.R.S. 9:2794 state that in order to demonstrate the appropriate degree of care owed by the defendant chiropractor, the expert who testifies must be licensed in Louisiana or actively practicing in this state. The expert, of course, must satisfy the trial judge that he or she is qualified to give testimony regarding the applicable standard of care. Here, the district judge determined that Dr. Poinsett was so qualified based upon his numerous years of experience, practice, and consultation in the field of chiropractic medicine. That decision of the district court was not erroneous. Therefore, the plaintiffs did meet the statutory requirements in establishing the standard of care in the Houma, Louisiana community and they did prove that Dr. Rasmussen's treatment of Mrs. Piazza fell short of that standard.
Defendants' alternative contention, which the court of appeal found unnecessary to address and which formed no part of the considerations which prompted this court to grant this writ, is that plaintiffs failed to prove that Dr. Rasmussen's treatment caused Mrs. Piazza's injuries. They rely upon the testimony of Dr. Del Walker, the orthopedic surgeon who operated on Mrs. Piazza to correct the herniated disc. Dr. Walker testified at one point that another physician's neurological examination of Mrs. Piazza approximately one month following her last treatment from defendant Dr. Rasmussen did not reveal a herniated disc. But, while he stated that neurological exams should indicate the presence of disc herniation if it existed, he also acknowledged that this is not always the case. Sometimes a neurological examination may not reveal disc herniation, and that severe leg pain and sciatica are also symptoms of a herniated disc (these complaints were apparently present when the other physician performed the neurological examination). Suffice it to say that our examination of this record does not indicate that the jury's finding and the district court judgment were wrong.
We have determined that the district court properly admitted the testimony of plaintiffs' expert, Dr. Poinsett, and that plaintiffs did adequately carry their burden of proving that Dr. Rasmussen negligently caused Mrs. Piazza's ruptured disc. The district court judgment will be reinstated.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and the judgment of the district court reinstated.
REVERSED; JUDGMENT OF DISTRICT COURT REINSTATED.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents and assigns reasons.
COLE, J., respectfully dissents.
LEMMON, Justice, concurring.
The locality rule in medical malpractice cases is appropriately applied when there may be an acceptably different standard of *1383 care or skill for the particular treatment in the locality in which the health care provider practices, such as when the situation dictates the use of sophisticated equipment not available in the health care provider's locale. Here, plaintiffs established through their expert the uniform national standard of care or skill for the particular treatment, and application of a different local standard was not warranted by the circumstances of the locality.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that Dr. Poinsett was qualified to testify in this case. The majority purports to hold chiropractors to the locality rule set forth in La.R.S. 9:2794(A)(1), but in effect treats them as specialists, by reasoning that there is one uniform standard of care for chiropractors, and a doctor knowledgeable in the national standard of care is therefore knowledgeable about the local standard of care.[1] I disagree with this reasoning. Under La.R.S. 9:2794(A)(1), the defendant should be held to the standard of "chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances (emphasis added)." In using this language, the legislature implicitly rejected the conclusion that testimony on a nationwide standard could satisfy the locality rule.[2] Indeed, it defies common sense to believe, for example, that an expert who had practiced in a large, wellequipped office in New York City could testify on the standard of care for a chiropractor who practices in a one-room office in a rural Louisiana town.
A review of the record shows that Dr. Poinsett was unable to testify as to the standard of care for chiropractors in a similar community and under similar circumstances. He had never been licensed in Louisiana, never practiced here and had not actively practiced since 1983. During the years he was actively practicing, he practiced in Denver, Colorado, Long Island, New York and Hollywood, Florida. Most importantly, he did not testify that the standard of care in these communities was similar to the standard of care practiced in Houma, Louisiana in 1989. Given these facts, I am unable to say Dr. Poinsett qualified under the locality rule. Therefore, I would affirm the decision of the court of appeal.
NOTES
[1] As defined by the plaintiffs' expert, chiropractic medicine is "the neurostructural mechanical approach to the correction of the problems of the spine and all of the anatomical joints of the body, through spinal manipulation, adjusting, with the application of various forms of physical therapy, exercise and diet." TR. 370.
[2] For example, even the defendant chiropractor, Dr. Rasmussen, testified that he practiced chiropractic medicine the same way in Houma as he did in New Orleans. TR. 219-20.

Q. Is there any difference in the type of care that you practiced here in Houma and Jeffersonville, Indiana as you did say in New Orleans or other large cities?
A. As far as different criteria of treatment?
Q. Yes.
A. Chiropractic is practiced pretty much the same ... [i]n those two cities, yes.
Q. So, I would take it that you would give the good people of Houma the same standard of care that you would have given someone in New Orleans, would you not?
A. Yes, I would.
Q. Does [sic] chiropractic schools differentiate in any way between the standard say in a small town such as Houma as opposed to New Orleans?
A. Do they differentiate? No. They teach you one standard of care insofar as the way you were taught.
[3] Dr. Rasmussen, defendant, testified that he thought there were approximately fifteen to twenty schools in the country which teach the practice of chiropractic medicine and that "[t]hey teach you one standard of care...." TR. 215,220. He also testified that "[c]hiropractic [medicine] is practiced pretty much the same [in all different sized towns and cities]." TR. 219. Dr. Rasmussen agreed with the assertion by plaintiffs' counsel that the standard of care that he has given in the different sized communities where he worked (i.e., larger and medium-sized cities as well as smaller towns) was always the same. TR. 220.

Dr. Manceaux, another chiropractor who testified for plaintiffs, was asked whether there is any difference in the standard of care practiced in a town of Houma's size as opposed to that practiced in a town the size of New Orleans. He responded, "No sir, absolutely not. I would expect the standards to be the same." TR. 287.
Without stating specifically that there is one standard of care throughout the country, Dr. Poinsett testified in numerous places in his deposition and also in his report issued May 10, 1988 (and referred to in the deposition) that the defendant's treatment of Mrs. Piazza was "below the standard" of care for chiropractic physicians. TR. 371-86.
[4] Dr. Poinsett obtained his chiropractic degree at the Chiropractic Institute of New York after completing 4,040 hours. Then, he interned for about ten months at Spear's Chiropractic Hospital in Denver, Colorado. He practiced in Long Island for several years before the state had licensing for chiropractors, then moved to Maryland and was not actively practicing in chiropractic medicine for the next ten years. Then, he moved to Florida where he and a friend from school ran a health club. In 1969, Dr. Poinsett obtained his license in Florida for the practice of chiropractic medicine which he began that year and continued until 1983. He was a consultant with the State of Florida and functioned as an independent chiropractic consultant with numerous insurance companies. Since 1983, Dr. Poinsett has carried only a few chiropractic patients, mainly doing consulting work with insurance companies and with attorneys in malpractice cases.
[1] The majority seems to infer that chiropractic medicine more closely resembles a specialty than a general field. I disagree with this reasoning. La.R.S. 9:2794(A)(1) creates two categories: physicians, dentists and chiropractic physicians in general and physicians, dentists and chiropractic physicians who are involved in medical specialties. It is inconsistent to interpret this language to mean all chiropractors are specialists. Rather, the legislature simply recognized that certain general chiropractors might be involved in particular medical specialties, in the same way general physicians can be involved in medical specialties. No evidence was presented that defendant was a chiropractic physician involved in a medical specialty; therefore, the locality rule should apply.
[2] Likewise, in Boudreaux v. Panger, 490 So.2d 1083 (La.1986), this court held a chiropractor to "the degree of care and skill ordinarily exercised by other chiropractors in a similar community." 490 So.2d at 1085 (emphasis added).