770 So.2d 21 (2000)
Ilene TASK
v.
Aubrey GATES and St. Paul Fire and Marine Insurance Company.
No. 00-99.
Court of Appeal of Louisiana, Third Circuit.
September 13, 2000.
Writ Denied December 8, 2000.
*22 Charles G. Gravel, Alexandria, LA, Counsel for Plaintiff.
Simoneaux Ryan Carleton, Baton Rouge, LA, Counsel for Defendants.
Court composed of NED E. DOUCET, Jr., Chief Judge, SYLVIA R. COOKS, and JOHN D. SAUNDERS, Judges.
DOUCET, Chief Judge.
This is an appeal from a trial court's decision to grant the Defendant's motion for summary judgment and dismiss the plaintiffs claim for damages incurred when her house was burglarized.
In order to sell her Alexandria, Louisiana house, the Plaintiff, Ilene Task, entered a "multiple listing agreement" with Prudential Noles-Frye Realty. She moved to Texas, leaving keys to the house and instructions for arming and disarming its security alarm system. Pursuant to the listing agreement, Prudential allowed Aubrey Gates, a realtor with Century 21, to show the house. He picked up a key and alarm instructions from Prudential. When he entered the house the alarm went off. He located the alarm and turned it off using the instructions provided. After showing the house he followed the instructions for reactivating the alarm and exited the house through the front door. No one showed the house again and on December 31, 1997, a Prudential agent discovered that the house had been burglarized. It was discovered that the Plaintiff had provided instructions for reactivating the alarm which were accurate only for use with the side entrance.
Task sued Gates and his insurer, St. Paul Fire and Marine Insurance Company, alleging negligence on the part of Gates in failing to properly activate the alarm system. Gates and St. Paul filed a motion for summary judgment, arguing that no material issue of fact remained but that Gates breached no duty owed to Task with regard to showing the house. The trial court granted the motion and dismissed Task's claims against the Defendants. Task appeals.
SUMMARY JUDGMENT
Our review of a grant or denial of a motion for summary judgment is de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, *23 and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the article was further amended to specifically alter the burden of proof in summary judgment proceedings as follows:
The burden of proof remains with the movant. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Independent Fire Ins. Co. v. Sunbeam Corp., 99-2257, p. 7 (La.2000); 755 So.2d 226, 230.
In this case, Task seeks to hold Gates liable for a negligent failure to properly set the security alarm on her house.
To determine whether a defendant is liable for negligent conduct, the duty/ risk analysis of LSA-C.C. Art. 2315 must be applied. Rowe v. Schumpert Medical Center, 26,334 (La.App.2d Cir. 12/07/94), 647 So.2d 390, 393, writ denied, 95-0075 (La.03/17/95), 651 So.2d 268. Whether a duty is owed is a question of law. Whether the defendant breached that duty is a question of fact.
[The plaintiff's] allegations that the [defendants] were negligent is subject to a duty-risk analysis, Roberts v. Benoit, 605 So.2d 1032 (La.1991). The duty/risk analysis involves a four-prong inquiry: (1) cause-in-fact, i.e., whether the defendant's conduct was a substantial factor in bringing about the harm to the plaintiff; (2) whether the defendant owed a duty to the plaintiff; (3) whether the defendant breached the duty; and (4) whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318. In order for the plaintiff to recover, all four inquiries must be answered affirmatively. Roberts v. Benoit, supra; Mart v. Hill, 505 So.2d 1120 (La.1987); Moore v. Esponge, 94-1192 (La.App. 3d Cir.03/08/95), 651 So.2d 962, 965. Thus, the defendant will be entitled to summary judgment if, without any real doubt, any one inquiry is answered negatively.
Mixon v. Davis, 31,725, pp. 3-4 (La.App. 2 Cir. 3/31/99); 732 So.2d 628, 630.
Recovery in this case turns on the determination of whether Gates breached any duty owed to Task with regard to securing her house. We must determine whether Gates "acted with the degree of care and skill ordinarily exercised by brokers. cf. Boudreaux v. Panger, 490 So.2d 1083 (La. 1986)." Egudin v. Carriage Court Condominium, Dehrvill Group, Inc., 528 So.2d 1043, 1048 (La.App. 5 Cir.1988)
As the court stated in Mallet v. Maggio, 503 So.2d 37, 38 (La.App. 1 Cir.1986), writ denied, 504 So.2d 880 (La.1987):
Ultimately the precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate agent undertakes to perform and the agreements he makes with the involved parties.
According to his unrefuted deposition testimony, Gates undertook only to follow the instructions given him with regard to setting the alarm. He followed the instructions provided by Task herself and, in spite of this, the alarm was not set. We find no authority for imposing a duty which would require a real estate agent to know more about an individual alarm system than the owner of the system. Accordingly, we find that Gates did not breach any duty owed the Plaintiff. As a *24 result, we affirm the trial court's grant of the motion for summary judgment.
AFFIRMED.
SAUNDERS, J., dissents and assigns written reasons.
SAUNDERS, J., dissenting:
"Generally, a person owes a duty to exercise reasonable care to protect against foreseeable risks of his misconduct." FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW, 101 (1996). However, this is the minimum standard of care required. In PROSSER AND KEETON ON TORTS, the authors state:
But if a person in fact has knowledge, skill, or even intelligence superior to that of the ordinary person, the law will demand of that person conduct consistent with it [knowledge, skill, or intelligence].
. . . .
Experienced milk haulers, hockey coaches, expert skiers, construction inspectors, and doctors must all use care which is reasonable in light of their superior learning and experience, and any special skills, knowledge or training they may personally have over and above what is normally possessed by persons in the field.
Professional persons in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability.
W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 32, at 185 (5th ed.1984). (Footnotes omitted.)
Further in the text, the authors describe the community standard of care required for those with superior knowledge and skill:
Since the standard is a community standard, evidence of the usual and customary conduct of others under similar circumstances is normally relevant and admissible.... Custom also bears on what others will expect the actors to do, and what, therefore is reasonable care may require the actor to do, upon the feasibility of taking precautions, the difficulty of change, and the actors opportunity to learn the risks and what is called for to meet them. If the actor does only what everyone else has done, there is at least an inference that the actor is conforming to the community's idea of reasonable behavior.
Id. § 33 at 193-195. (Emphasis added)(footnotes omitted).
In Mallet v. Maggio, 503 So.2d 37, 38 (La.App. 1 Cir.1986), writ denied, 504 So.2d 880 (La.1987), the court discussed heightened duties of realtors:
A real estate broker is a trained professional who holds himself out as trained and experienced to render a specialized service in real estate transactions. The broker stands in a fiduciary relationship to his client, and is bound to exercise reasonable care, skill and diligence in the performance of his duties. Generally, a broker's duties "are limited to those which can be analogically drawn from La.R.S. 37:1454 and from the customs and practices of real estate brokers in general." However, as stated by the Court in Latter & Blum, Inc. v. Richmond, 388 So.2d 368 (La.1980), at p. 372.
Ultimately the precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate agent undertakes to perform and the agreements he makes with the involved parties.
(Emphasis added.) (Citations omitted.)
Although Mallet is distinguishable on the facts, the principle is applicable to the instant case. A realtor has a duty to comply with the "customs and practices of real estate brokers" in the area, i.e., the community standard of care.
While the house is on the market, the seller entrusts his home to the realtor's *25 care, and he has complete access to the home. It is conceded that a realtor, upon the completion of showing a house, has a duty to properly secure the seller's house. Gates, in his deposition, acknowledged this duty, and Plaintiff was under the impression that this duty would be carried out by the agents who showed her house.
In the instant case, we are told that:
The First Alert 120C alarm system is a very simple system to determine whether or not the alarm system has been armed. On the facing of the keypad there are two (2) areas which contain a red light and a green light. Next to the red light is the word "armed", next to the green light is the word "ready". In order to determine if the security system is armed the red light next to the word armed will be illuminated. If the system is not activated, the red light will not be illuminated.
(Emphasis added.)
Nevertheless, Gates asserts that he was unable to properly secure the house because of Plaintiff's inaccurate instructions and further asserts that he is "no expert on alarm codes" and these facts should certainly be considered by the fact finder in weighing the comparative fault of the parties. Nevertheless, in light of the training and licensure required, and the fact that sellers entrust their homes to agents, an agent must use "care which is reasonable in light of their superior learning and experience and any special skills knowledge or training they may personally have over and above what is normally possessed by persons in the field" in securing a seller's home. See KEETON, ET AL., § 32, at 185. Gates should be held to a higher standard of care, i.e. the standard exercised by real estate agents in the community. Thus, in order to prevail on a motion for summary judgment, he must show that the standard of care for a realtor in the community does not necessarily require knowledge of the basic workings of an alarm system of the type. The record is void of any such proof. I respectfully dissent.