GREMILLION, Judge.
In this case, the plaintiff, Ronnie Gene Arthur, Jr., appeals the finding of the trial court granting summary judgment in favor of the defendants, the City of DeRidder and Beauregard Parish Sheriff M. Bolivar Bishop. For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On October 31, 1995, Arthur and several of his friends traveled from Leesville, Louisiana to DeRidder, Louisiana to attend a *591 Halloween haunted house located at the old Beauregard Parish jail on West First Street. After exiting the haunted house at around 10:00 p.m., Arthur and his friends were returning to their vehicles parked across the street from the event when Arthur was struck by a vehicle driven by Chais Sweat, who is no longer a party to this litigation.
Arthur originally sued the City along with numerous others and later amended his original petition approximately one year later to add Sheriff Bishop as a defendant. In August 1998, the trial court denied motions for summary judgment in favor of the City and others, but, in early October 2000, granted summary judgment in favor of the City and Sheriff Bishop primarily based on Johnson v. Gilmore, 99-1300 (La.App. 3 Cir. 4/5/00); 771 So.2d 662, a decision rendered in the interim between the first summary judgment hearing and the latter.
Arthur assigns as error:
1. The trial court’s dismissal of the City and Sheriff Bishop from the suit based on a finding that no traffic control duty was owed by them to patrons at a public event held at night.
|22. The trial court’s finding that traffic control was not within the scope of the request by event sponsors that the police and sheriffs department provide crowd control.
3. The trial court’s failure to recognize that the police’s duty to “protect the public safety” requires traffic control assistance at public events.
4. The trial court’s finding that the police’s duty did not extend to traffic control at a public nighttime event in the absence of a public emergency.
SUMMARY JUDGMENT
On appeal, summary judgments are reviewed de novo. Magnon v. Collins, 98-2822 (La.7/7/99); 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. Id. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La. Code Civ.P. art. 966(B) and (C). This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party’s claim. If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist.
Material facts are those that determine the outcome of .the legal dispute. Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. Id. Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).
DUTY
The issue before us is whether there is any genuine issue of material fact as to whether the City or Sheriff Bishop owed a duty toward Arthur. This is a question of law. Task v. Gates, 00-99 (La.App. 3 Cir. 9/13/00); 770 So.2d 21. We agree with the trial court’s grant of summary judgment in favor of the City and Sheriff Bishop because there is no real doubt that they did not owe a duty to Arthur.
*592 “Every negligence case must be decided on its own facts and circumstances.” Roberts v. Benoit, 605 So.2d 1032, 1055 (La.1991), citing Foggin v. General Guaranty Ins. Co., 250 La. 347, 195 So.2d 636 (1967). After thoroughly reviewing the record we adduced the following non-disputed facts. The haunted house event at the old jail was in its fourth year of operation. Charles Poe, a member of the Board of Directors and chairman of the old jail restoration committee for the Beauregard Parish Historical Society, coordinated the event. He estimated that between 1000 and 1400 people attended the event in 1995, with similar attendance figures reported for the previous years. Regular traffic was allowed on West First Street, a thirty-seven foot wide, two lane, one-way street that was not barricaded for the event. All parking lots near the jail were open. Arthur parked across from the old jail in a privately-owned shopping center parking lot.
Poe testified that the assistance of two deputy sheriffs and two city police officers was requested to “control the crowd” in and around the jail and to act as a ubiquitous presence that would deter any rowdiness. He further stated that the officers were not hired with the intention of carrying out any sort of traffic plan but|4only to maintain crowd control in and immediately around the building. He testified that he did not ask City officials or the Sheriffs Department to formulate any traffic control plan including parking provisions. He testified via deposition:
Q. In regard to assistance for pedestrians that were crossing the streets and highways to get to the event, what plans were made in those areas?
A. Basically, absolutely none. The sheriffs department, police department, were never told by me or anybody, to escort people across the streets; at intersections, to stop people from jaywalking. Their only reason for being there was to help maintain security inside the jail. To be there to assist people, and that was it.
Q. You didn’t formulate any plans with the event sponsors or with the Beauregard Sheriffs Department or the City Police Department in the areas of traffic control or pedestrian assistance or crowd control?
A. Crowd control around the jail premises; yes, sir, but not on the thoroughfares.
He further stated that there was no contract entered into between the Historical Society and Sheriff Bishop or the City regarding the services to be provided and that the officers present were not compensated for their services. Arthur presented no evidence to refute this testimony.
Thus, as only the City and Sherriff are parties to this appeal, the real question is whether they owed a duty to control traffic when it was undisputed in the record that no mention of traffic control was indicated.[1]
Recently, in Johnson, 771 So.2d 662, we addressed facts nearly identical to these. In that case, the plaintiff was attending the Nursery Festival in Forest Hill, Louisiana. She had just crossed Highway 112 and was on the shoulder of the road when her knee was struck by a vehicle driven by Gilmore. Plaintiff sued the chief of police and the city, among others, alleging that their failure to formulate a traffic control plan and assist pedestrians crossing highways breached a duty owed to her. In finding that no such duty existed, we essentially found that the city and chief of *593 police could not be held liable because they had not assumed a duty to control traffic as the festival organizers had not made any such arrangements and there were no organized traffic plan. Arthur relies heavily on the case of Blair v. Tynes, 621 So.2d 591 (La.1993), in his argument against summary judgment. We find it is distinguished from the instant case.
In Blair, a pedestrian was killed crossing the highway as she exited a Mardi Gras fundraiser event. The leasing agreement between the event sponsors and the building owners required that the owners approve, hire, and schedule special personnel specifically for traffic direction. Thus, five deputies from the local sheriffs department were hired to direct traffic. That number was established based on an expected attendance of around five hundred persons with one deputy per one hundred guests. When they arrived at the event, the plaintiff and his wife parked across the highway from where it was being held. Upon approaching the highway they were directed to cross it by one of the deputies. Upon leaving the event, the officers were again directing traffic in the area and had a police car with flashing lights, thereby, creating a “protected neutral zone.” After looking both ways, the plaintiff and his wife attempted to cross the street. Though they saw the defendant’s vehicle approaching, the plaintiff testified that they believed that the deputies were stopping traffic to allow pedestrian traffic to traverse the highway. The plaintiff andJjjhis wife were not warned by the deputy of the danger of the oncoming vehicle until it hit the plaintiffs wife. The court found that the deputies did have a duty to protect the pedestrian invitees at the event based on the provisions set forth in La.R.S. 32:1 et seq., and on jurisprudential findings. However, in all of the cases relied upon by the court, the deputies had assumed a duty and/or were actively engaged in directing traffic. That is not the case here, and Arthur has failed to set forth any evidence to suggest that the City or Sheriff Bishop assumed such a duty. Thus, we find Blair distinguishable on these facts.
While we agree with Arthur that it is certainly foreseeable that persons leaving the event will have to cross the street to return to their vehicles, we do not think that the scope of the duty should extend to this particular risk. The question is whether unpaid police officers, who have been asked to have a “presence” in order to “keep the peace” at a haunted house event, have a duty to take it upon themselves to control and direct vehicular traffic on the highways surrounding the event in order to prevent a pedestrian from walking into the street in the face of an oncoming vehicle. We do not think so. A person cannot be protected from every risk which he or she faces in life. Since it is undisputed that the City and Sheriff Bishop were not asked to control traffic, nor did they assume a duty of traffic control, we find no legal duty incumbent upon them to undertake one. Therefore, we find that summary judgment was properly granted.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Ronnie Gene Arthur, Jr.
AFFIRMED.

. Note, we do not determine whether the event coordinators had a duty to provide traffic control for the event, only whether the City or the Sheriff did.